LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; Laborers Vacation–Holiday Trust Fund for Northern California; Laborers Pension Trust Fund for Northern California; Laborers Training and Retraining Trust Fund for Northern California, Plaintiffs–Appellants–Cross–Appellees,

v.

LESLIE G. DELBON CO., INC., a California corporation, Defendant–Appellee–Cross–Appellant.

Nos. 98–16407, 98–16488.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 1999.

Decided Jan. 6, 2000.

Linda Baldwin Jones, Joseph A. Creitz, Christian L. Raisner, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, California, for the plaintiffs-appellants.

Deborah E.G. Wilder, Deborah Wilder & Associates, Burlingame, California, for the defendant-appellee.

Before: GOODWIN, SCHROEDER, and ALARCON, Circuit Judges.

## OPINION

SCHROEDER, Circuit Judge:

Laborers Health and Welfare Trust Fund for Northern California (the "Fund") appeals the district court's grant of summary judgment in favor of Leslie G. Delbon Co., Inc. in the Fund's action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1101, et seq., to collect unpaid employer contributions. The district court held that after 1984, Delbon had no obligation to make contributions to the Fund. We affirm.

In 1980, Delbon signed a memorandum agreement constituting its assent to a collective bargaining agreement ("CBA") with the Northern District Council of Laborers negotiated on employers' behalf by Associated General Contractors ("AGC"). The

CBA obligated Delbon to contribute to a multi-employer retirement plan administered by the Fund. The memorandum agreement contained specific provisions for termination, which required that Delbon provide the Union with written notice not more than 90 nor less than 60 days before June 15, 1983. If Delbon did not provide this notice, the CBA was to renew automatically for a one year period, and continue to do so each subsequent year unless Delbon provided notice of termination during the same 60–90 day window in the year Delbon wished to terminate. The agreement did not require Delbon to provide separate notice of termination to the Fund.

In January 1983, Delbon withdrew from AGC the authority to negotiate on Delbon's behalf. The Union informed Delbon by letter that this was insufficient to terminate Delbon's ongoing commitment to the CBA. By letter dated April 14, 1984, Delbon's president informed the Union of his intention to terminate the CBA effective June 15, 1984. The Union acknowledged receipt of this letter on April 16. On July 18 and August 8, the Union sent letters to Delbon asserting its belief that Delbon's termination had been untimely. In the August 8 letter, the Union demanded that Delbon transmit to the Union information regarding the number of Delbon employees covered under the CBA and stated that it would file suit within ten days to compel arbitration if Delbon did not comply. Delbon did not comply, but the Union did not in fact file suit; nor did it initiate any subsequent communication with Delbon or further dispute the effectiveness of Delbon's termination of the CBA in any way.

Delbon ceased making payments to the Fund at some point during 1983. In August 1984, Delbon's status in the Fund's computer system was converted to "inactive," denoting a cessation of payments to the plan. The Fund does not pursue enforcement actions against every employer who becomes inactive, but rather relies on a random audit process to identify poten-

tial ERISA violators. This process did not select Delbon for audit until 1995. In 1996, the Fund brought this suit seeking payment of delinquent contributions allegedly owing under the 1980 CBA. The district court granted summary judgment in favor of Delbon, holding there had been a valid, final termination of the CBA in 1984. The Fund now appeals, arguing that our decision in *Carpenters Health and Welfare Trust Fund for Cal. v. Bla–Delco Constr., Inc.*, 8 F.3d 1365 (9th Cir.1993), compels a contrary result.

In *Bla–Delco*, we held that a trust fund cannot be forced to litigate an ongoing dispute about termination between an employer and a union. *Id.* at 1368–1369. In that case, the employer attempted to terminate a CBA effective June 15, 1987. The union replied that termination was untimely and that it considered the CBA in effect until June 15, 1989. The employer ceased making ERISA contributions in 1987 anyway, and the affected trust fund filed suit in 1990. We held that the employer should have taken the termination dispute to arbitration and was not entitled to raise the attempted termination as a defense in the fund's collection action. *Id.* at 1369.

*Bla–Delco* dealt with a dispute regarding termination that neither party had shown an intention to abandon. In this case, however, the Union threatened to file suit within ten days but instead did nothing for over ten years. There would have been no reason for Delbon to pursue arbitration in 1983. Delbon was entitled to believe that the Union had abandoned its challenge to the termination and that its contribution obligation was at an end.

We recognized in *Bla–Delco* that trust funds should not be forced to litigate ongoing termination disputes, but we have also recognized that employers should not be forced to arbitrate non-existent ones. We explained this distinction in *Sheet Metal Workers' Int'l Assn. v. West Coast Sheet Metal Co.*, 954 F.2d 1506 (9th Cir.1992), a case that permitted an employer to raise

union decertification as a defense to an ERISA collection action because the employer properly assumed that its contribution obligations were at an end once the union was decertified. *Id.* at 1510. We stated that although not all contract defenses apply in an ERISA action, a "contract to contribute to a trust fund of a Union with which West Coast has no ongoing collective bargaining agreement makes no sense." *Id.* at 1509. In the instant case, the Union's decision to do nothing, despite its threats, to dispute the validity of Delbon's termination of the CBA made Delbon's assumption that its contribution obligations were at an end similarly appropriate. In the absence of any of the concerns present in *Bla–Delco* regarding the propriety of forcing trust funds to litigate fresh and unresolved disputes between unions and employers, the logic of *Sheet Metal* applies here. The district court properly granted summary judgment in favor of Delbon.

Delbon cross-appeals on the issue of attorneys' fees. The district court did not abuse its discretion in declining to award fees.

AFFIRMED.